## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS,
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| **DIAGNOSTIC AFFILIATES OF NORTHEAST HOU, LLC D/B/A 24 HOUR COVID RT-PCR LABORATORY** | § § § | |
| *Plaintiff,* | § | |
| | § | C.A. No. _____ |
| **v.** | § | |
| **AETNA, INC., AETNA BETTER HEALTH OF TEXAS, INC., AETNA HEALTH AND LIFE INSURANCE COMPANY, AETNA HEALTH INC., AETNA HEALTH INSURANCE COMPANY, AETNA HEALTH MANAGEMENT, LLC., AETNA MEDICAID ADMINISTRATORS LLC, AETNA MEDICAID ADMINISTRATORS LLC, MERITAIN HEALTH, INC., FIRST HEALTH LIFE & HEALTH INSURANCE COMPANY, ADP TOTALSOURCE, INC. HEALTH AND WELFARE PLAN, GROUP HEALTH & WELFARE PLAN, EXXON MOBIL MEDICAL PLAN, ASTRAZENECA HEALTH AND WELFARE PLAN, CATHOLIC HEALTH INITIATIVES MASTER TRUST, COSTCO WHOLESALE CORPORATION CAFETERIA PLAN, CVS HEALTH DEFINED BENEFIT PLANS MASTER TRUST, FIDELITY NATIONAL FINANCIAL, INC. WELFARE PLAN, GE GLOBAL HEALTH PLAN, GT SERVICES LLC MEDICAL INSURANCE, HUNTSMAN CORPORATION EMPLOYEE BENEFIT PLAN, INDORAMA VENTURES OXIDES, LLC., WELFARE BENEFITS PLAN, LINDE COMPREHENSIVE WELFARE BENEFIT PLAN, LYONDELL CHEMICAL CO, EQUISTAR** | § § § § § § § § § § § § § § § § § § § § § § § | |

**CHEMICALS LP, AND HOUSTON** §
**REFINING, LP MASTER TRUST,** §
**MEMORIAL HERMANN HEALTH** §
**SYSTEM FLEXIBLE BENEFIT PLAN,** §
**OPRONA, INC. DBA ROSEN USA,** §
**INC., GROUP WELFARE PLAN FOR** §
**QUEST DIAGNOSTICS** §
**INCORPORATED, THE FRIEDKIN** §
**GROUP WELFARE BENEFITS PLAN,** §
**TORQUE TOOLS INC HEALTH PLAN,** §
**UPS HEALTH AND WELFARE PLAN,** §
**WALMART INC. ASSOCIATES** §
**HEALTH AND WELFARE PLAN,** §
**RESTATED ZIONS BANCORP.** §
**EMPLOYEE AND RETIREE** §
**WELFARE BENEFIT PLAN,** §
**ACCENTURE UNITED STATES** §
**GROUP HEALTH PLAN, ALIGHT** §
**SOLUTIONS LLC HEALTH AND** §
**WELFARE PLAN, AMERICAN** §
**INTERNATIONAL GROUP, INC.** §
**MEDICAL PLAN, ARAMCO U. S.** §
**WELFARE BENEFIT PLAN,** §
**COLLABERA INC. 125 BENEFIT** §
**PLAN, EDUCATIONAL TESTING** §
**SERVICE WELFARE BENEFITS** §
**PLAN, KPMG LLP HEALTH PLANS,** §
**MANN EYE CENTER PA HEALTH** §
**AND WELFARE PLAN, PAYCHEX** §
**BUSINESS SOLUTIONS LLC** §
**EMPLOYEE BENEFIT PLAN,** §
**R & L CARRIERS GROUP BENEFITS** §
**PLAN, SAP AMERICA HEALTH &** §
**WELFARE PLAN, TECHNOLOGY** §
**SERVICES GROUP, LLC EMPLOYEE** §
**BENEFITS PLAN, TETRA TECH, INC.** §
**FULLY INSURED HMO BENEFIT** §
**PLAN, TRINET GROUP, INC., UNITED** §
**AIRLINES CONSOLIDATED** §
**WELFARE BENEFIT PLAN,** §
**WYNDHAM HOTELS & RESORTS** §
**HEALTH AND WELFARE PLAN,** §
**AARTHUN PERFORMANCE GROUP** §
**LTD HEALTH PLAN, AGILITY** §
**RECOVERY SOLUTIONS, INC.** §
**HEALTH AND WELFARE PLAN,** §

**AMERICAN AIR LIQUIDE** §
**HOLDINGS INC.** §
**HEALTH PLAN, ARKEMA INC.** §
**HEALTH PLAN, C. V. STARR & CO.** §
**HEALTH PLAN, CEMEX, INC.** §
**WELFARE BENEFIT PLAN,** §
**CITIGROUP LEGAL BENEFITS** §
**PLAN, COX ENTERPRISES, INC.** §
**WELFARE BENEFIT PLAN,** §
**DELOITTE & TOUCHE WELFARE** §
**BENEFIT PLAN, ENERCON** §
**SERVICES, INC. EMPLOYEE** §
**HEALTH & WELFARE BENEFIT** §
**PLAN, ENTERGY CORPORATION** §
**COMPANIES' BARGAINING** §
**EMPLOYEES' WELFARE BENEFIT** §
**TRUST, FIRST COMMUNITY** §
**BANCSHARES, INC. EMPLOYEE** §
**BENEFIT PLAN, HCA INC. AND** §
**WELFARE BENEFITS PLAN, HILTON** §
**WORLDWIDE HEALTH PLAN,** §
**INFOSYS BPM LIMITED HEALTH** §
**PLAN, INFRAMARK, LLC WELFARE** §
**BENEFIT WRAP PLAN,** §
**INTERNATIONAL CELLULOSE** §
**CORPORATION HEALTH PLAN,** §
**INVESCO HEALTH PLAN, IQVIA INC.** §
**HEALTH PLAN, THE IRON** §
**MOUNTAIN COMPANIES WELFARE** §
**PLAN, LAWLER FOODS, LTD.** §
**HEALTH & WELFARE PLAN,** §
**LEIDOS EMPLOYEE HEALTH AND** §
**WELFARE BENEFITS PLAN,** §
**LOCKHEED MARTIN** §
**CORPORATION BASIC BENEFIT** §
**PLAN FOR HOURLY EMPLOYEES,** §
**MAGELLAN HEALTH & WELFARE** §
**PLAN, MCCOMBS ENTERPRISES** §
**HEALTH PLAN, MITSUBISHI** §
**ELECTRIC U.S. COMPANIES** §
**HEALTH AND WELFARE PLAN,** §
**NUSTAR OMNIBUS WELFARE PLAN,** §
**OCCIDENTAL PETROLEUM** §
**CORPORATION WELFARE PLAN,** §
**OPKO HEALTH, INC. HEALTH AND** §
**WELFARE PLAN, REPSOL USA** §

**HOLDINGS CORPORATION-** §
**WELFARE PLANS,** §
**SALESFORCE.COM HEALTH AND** §
**WELFARE PLAN, SHI** §
**INTERNATIONAL CORP. HEALTH** §
**AND WELFARE PLAN, SNAP-ON** §
**INCORPORATED NON-UNION** §
**RETIREE HEALTH AND WELFARE** §
**BENEFIT PLAN, T-MOBILE USA, INC.** §
**EMPLOYEE BENEFIT PLAN,** §
**TRANSWESTERN COMMERCIAL** §
**SERVICES COMPREHENSIVE** §
**HEALTH AND  WELFARE BENEFIT** §
**PLAN, TRINITY UNIVERSITY** §
**WELFARE BENEFIT PLAN,** §
**WILLIAM MARSH RICE** §
**UNIVERSITY HEALTH AND** §
**WELFARE PLAN, DECYPHER** §
**TECHNOLOGIES EMPLOYEE** §
**BENEFITS PLAN** §
   *Defendants.* §
 §

## ORIGINAL COMPLAINT AND JURY DEMAND

Plaintiff Diagnostic Affiliates of Northeast Hou, LLC d/b/a 24 Hour Covid RT-PCR Laboratory ("24 Hour Covid" or "Plaintiff"), by and through its attorneys, brings its Original Complaint against Aetna[1] and the Employer Plans[2], and alleges as follows:

## NATURE OF THE CLAIMS

1.      24 Hour Covid is a CLIA certified high complexity laboratory that has requested emergency use authorization under Section 564 of the Federal Food, Drug, and Cosmetic Act; therefore, has all authorizations and/or approvals necessary to render and be reimbursed for Covid Testing services.[3] At the height of the pandemic 24 Hour Covid operated seven publicly accessible specimen collection sites located across the States of Texas and Louisiana, and partnered and contracted with private employers, residential/long-term care facilities, local and surrounding municipalities, and independent school districts across Texas to render Covid Testing services to employees, the elderly, teachers, students, and many other members of these communities and organizations.[4]

2.      Aetna provides health insurance and/or benefits to members of many different types of private health plans either insured or administered by Aetna pursuant to a variety of health benefit plans and policies of insurance, including employer-sponsored benefit plans and individual health benefit plans.

---

[1] "**Aetna**" refers to Aetna, Inc., Aetna Better Health of Texas, Inc., Aetna Health and Life Insurance Company, Aetna Health Inc., Aetna Health Insurance Company, Aetna Health Management, LLC, Aetna Medicaid Administrators LLC, Aetna Medicaid Administrators LLC, Meritain Health, Inc., First Health Life & Health Insurance Company.
[2] "**Employer Plans**" refers to the Defendants identified commencing from paragraph 20 through 95 of this Original Complaint.
[3] See 21 U.S.C. § 360bbb–3.
[4] Humble ISD Expands Options for Student Covid Testing (https://www.humbleisd.net/covid19studenttesting); Humble ISD expands free COVID-19 testing options to provide easier access for students (https://communityimpact.com/houston/lake-houston-humble-kingwood/education/2021/01/07/humble-isd-expands-free-covid-19-testing-options-to-provide-easier-access-for-students/).

3.      Aetna also serves in the trusted role of third-party claims administrator for self-funded health plans, including the Employer Plans that are included as Defendants in this Original Complaint.

4.      Aetna also provides health insurance and/or benefits to members of many different types of Medicare Advantage and Medicaid Managed Care health plans that are administered by Aetna pursuant to a variety of health plans and policies of insurance.

5.      Under ordinary circumstances, not all health plans insured or administered by Aetna offer its members with access to out-of-network ("OON") providers and facilities. However, pursuant to Section 6001 of the Families First Coronavirus Response Act (the "FFCRA"), as amended by Section 3201 of the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), all group health plans and health insurance issuers offering group or individual private health insurance coverage are required to provide benefits for certain items and services related to diagnostic testing for the detection or diagnosis of COVID-19 without the imposition of cost-sharing, prior authorization, or other medical management requirements when such items or services are furnished on or after March 18, 2020, for the duration of the COVID-19 public health emergency regardless of whether the Covid Testing provider is an in-network or OON provider.[5]

6.      Section 3202(a) of the CARES Act provides that all group health plans and health insurance issuers covering Covid Testing items and services that are subject to Section 6001 of the FFCRA, as amended, must reimburse OON providers in an amount that equals the cash price for such Covid Testing services as listed by the OON provider on its public internet website or to negotiate a rate/amount to be paid that is less than the publicized cash price.

---

[5] *See* CMS FAQ Parts 42, 43, and 44, The FFCRA and the CARES Act.

7.      Additionally, Sections 6003 and 6004 of the FFCRA require that all Medicare Advantage and Medicaid Managed Care plans to also cover Covid Testing services without the imposition of member cost-share obligations, prior authorization requirements, or other utilization management requirements throughout the duration of the COVID-19 public health emergency regardless of whether the provider is an in-network or OON.

8.      Here, Aetna has intentionally disregarded its obligations to comply with its requirements to cover Covid Testing services without the imposition of cost-sharing and other medical management requirements pursuant to Sections 6001, 6003, and 6004 of the FFCRA and, in the instances Plaintiff is reimbursed for its Covid Testing services, has failed to reimburse Plaintiff in accordance with Section 3202(a) of the CARES Act for those claims subject to Section 6001 of the FFCRA, as amended. These violations are made to financially benefit Aetna, and, by acting in its own self-interests, has also caused the Employer Plans to be in violation of the FFCRA and the CARES Act.

9.      Furthermore, because the Employer Plans have contracted with Aetna to act as their third-party claim's administrator, the Employer Plans, through their silence and inaction, are dually liable for Aetna's violations of the FFCRA and the CARES Act.

## PARTIES

10.     Plaintiff 24 Hour Covid is a limited liability company organized under the laws of the State of Texas, with its company headquarters located at 22751 Professional Drive, Suite 210, Kingwood, Texas 77339. 24 Hour Covid has lawful standing to bring in all claims asserted herein.

## AETNA AFFILIATED ENTITIES ("AETNA")

11.     Defendant Aetna, Inc., insures and/or administers health plans subject to Sections, 6001, 6003, and 6004 of the FFCRA.  Aetna, Inc. may be served with process by serving its registered agent at Aetna, Inc., National Accounts Law Dept. 151 Farmington Avenue, Hartford, CT 06156.

12.     Aetna Better Health of Texas Inc. insures and/or administers basic health main organization plans subject to Sections, 6001, 6003, and 6004 of the FFCRA.  Aetna Better Health of Texas, Inc. may be served with process by serving its registered agent at CT Corporation System, 1999 Bryan St, Ste 900, Dallas, Texas 75201-4284.

13.     Aetna Health And Life Insurance Company insures and/or administers life, health or accident plans subject to Sections, 6001, 6003, and 6004 of the FFCRA.  Aetna Better Health of Texas, Inc. may be served with process by serving its registered agent at CT Corporation System, 1999 Bryan St, Ste 900, Dallas, Texas 75201-4284.

14.     Aetna Health Inc. insures and/or administers basic health organization plans subject to Sections, 6001, 6003, and 6004 of the FFCRA.  Aetna Health Inc. may be served with process by serving its registered agent at CT Corporation System, 1999 Bryan St, Ste 900, Dallas, Texas 75201-4284.

15.     Aetna Health Insurance Company insures and/or administers life, health, or accident plans subject to Sections, 6001, 6003, and 6004 of the FFCRA.  Aetna Health Insurance

Company may be served with process by serving its registered agent at CT Corporation System, 1999 Bryan St, Ste 900, Dallas, Texas 75201-4284.

16.     Aetna Health Management, LLC insures and/or administers plans subject to Sections, 6001, 6003, and 6004 of the FFCRA.  Aetna Health Insurance Company, LLC may be served with process by serving its registered agent at Commissioner of Insurance, 333 Guadalupe Street, Austin, Texas 78701-3938.

17.     Aetna Medicaid Administrators LLC insures and/or administers plans subject to Sections, 6001, 6003, and 6004 of the FFCRA.  Aetna Medicaid Administrators, LLC may be served with process by serving its registered agent at Commissioner of Insurance, 333 Guadalupe Street, Austin, Texas 78701-3938.

18.     Meritain Health, Inc. insures and/or administers plans subject to Sections, 6001, 6003, and 6004 of the FFCRA.  Meritain Health, Inc. may be served with process by serving its registered agent at Commissioner of Insurance, 333 Guadalupe Street, Austin, Texas 78701-3938.

19.     First Health Life & Health Insurance Company insures and/or administers Life, Health, or Accident plans subject to Sections, 6001, 6003, and 6004 of the FFCRA.  First Health Life & Health Insurance Company may be served with process by serving its registered agent at CT Corporation System, 1999 Bryan St, Ste 900, Dallas, Texas 75201-4284.

**SELF-FUNED HEALTH PLANS ADMINSTERED BY AETNA ("EMPLOYER PLANS")**

20.     Defendant ADP TotalSource, Inc. Health and Welfare Plan (the "ADP Plan"), is a self-funded health plan subject to Section 6001 of FFCRA, as amended. The ADP Plan may be served with process by serving its registered agent: Kristen Appleman, CT Corporation System 1999 Bryan St., Ste. 900, Dallas, Texas 75201-3136.

21.     Defendant Group Health & Welfare Plan (the "Amazon Plan") is a self-funded health plan subject to Section 6001 of FFCRA, as amended. The Amazon Plan may be served with process by serving its registered agent:  Brent Jaye, Corporation Service Company Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

22.     Defendant Exxon Mobil Medical Plan (the "Exxon Plan") is a self-funded health plan subject to Section 6001 of FFCRA, as amended. The Exxon Plan may be served with process by serving its registered agent:  Santiago R. Bianchi, Corporation Service Company Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

23.     Defendant AstraZeneca Health And Welfare Plan (the "AstraZeneca Plan") is a self-funded health plan subject to Section 6001 of FFCRA, as amended. The AstraZeneca Plan may be served with process by serving its registered agent:  Janet Levent, CT Corporation System 1999 Bryan St., Ste. 900, Dallas, Texas 75201-3136.

24.     Defendant Catholic Health Initiatives Master Trust (the "Catholic Plan") is a self-funded health plan subject to Section 6001 of FFCRA, as amended. The Catholic Plan may be served with process by serving its registered agent:  Attn: Troy Lindon, 1999 Bryan St., Ste. 900 Dallas, Texas 75201-3136.

25.     Defendant Costco Wholesale Corporation Cafeteria Plan (the "Costco Plan") is a self-funded health plan subject to Section 6001 of FFCRA, as amended. The Costco Plan may be served with process by serving its registered agent:  Attn: Joe Moore, CT Corporation System 1999 Bryan St., Ste. 900, Dallas, Texas 75201-3136.

26.     Defendant CVS Health Defined Benefit Plans Master Trust (the "CVS Plan") is a self-funded health plan subject to Section 6001 of FFCRA, as amended. The CVS Plan may be

served with process by serving its registered agent:  Attn: Roberta F. Johnnene, CT Corporation System 1999 Bryan St., Ste. 900, Dallas, Texas 75201-3136.

27.     Defendant Fidelity National Financial, Inc. Welfare Plan (the "Fidelity Plan") is a self-funded health plan subject to Section 6001 of FFCRA, as amended. The Fidelity Plan may be served with process by serving its registered agent:  Emily Roberts, CT Corporation System 350 N. St. Paul St., Ste. 2900, Dallas, Texas 75201-4234.

28.     Defendant Ge Global Health Plan (the "GE Plan") is a self-funded health plan subject to Section 6001 of FFCRA, as amended. The GE Plan may be served with process by serving its registered agent:  Susan Moley, CT Corp System 1999 Bryan St., Ste. 900 Dallas, Texas 75201-3136.

29.     Defendant GT Services LLC Medical Insurance (the "GT Plan") is a self-funded health plan subject to Section 6001 of FFCRA, as amended. The GT Plan may be served with process by serving its registered agent:  Susan Morgan, 28231 Dal-Cin, San Antonio, Texas 78260.

30.     Defendant Huntsman Corporation Employee Benefit Plan (the "Huntsman Plan") is a self-funded health plan subject to Section 6001 of FFCRA, as amended. The Huntsman Plan may be served with process by serving its registered agent: Jena Stem, Corporation Service Company Lawyers Incorporating Service Company 211 E. 7th Street, Suite 620, Austin, Texas 78701.

31.     Defendant Indorama Ventures Oxides, LLC Welfare Benefits Plan (the "IVO Plan") is a self-funded health plan subject to Section 6001 of FFCRA, as amended. The IVO Plan may be served with process by serving its registered agent: Paul Fusco, C S C Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

32.     Defendant Linde Comprehensive Welfare Benefit Plan (the "Linde Plan") is a self-funded health plan subject to Section 6001 of FFCRA, as amended. The Linde Plan may be served with process by serving its registered agent: Kristen Putnam, Prentice Hall Corporation System 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

33.     Defendant Lyondell Chemical Co, Equistar Chemicals LP, And Houston Refining, LP Master Trust (the "Lyondell Plan") is a self-funded health plan subject to Section 6001 of FFCRA, as amended. The Lyondell Plan may be served with process by serving its registered agent: Becki Patterson Holmes, CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, Texas 75201-3136.

34.     Defendant Memorial Hermann Health System Flexible Benefit Plan (the "Memorial Plan") is a self-funded health plan subject to Section 6001 of FFCRA, as amended. The Memorial Plan may be served with process by serving its registered agent: Ann Hollingsworth, CT Corporation System, 1999 Bryan St. 900, Dallas, Texas 75201.

35.     Defendant Oprona, Inc. Dba Rosen USA, INC. (the "Rosen Plan") is a self-funded health plan subject to Section 6001 of FFCRA, as amended. The Rosen Plan may be served with process by serving its registered agent: Claudia M. Escalante, 223 Hull Lane, Sugar Land, Texas 77498.

36.     Defendant Group Welfare Plan for Quest Diagnostics Incorporated (the "Quest Plan") is a self-funded health plan subject to Section 6001 of FFCRA, as amended. The Quest Plan may be served with process by serving its registered agent: Cecilia Mckenney, C S C Company Lawyers Incorporating Service Co. 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

37.     Defendant The Friedkin Group Welfare Benefits Plan (the "Friedkin Plan") is a self-funded health plan subject to Section 6001 of FFCRA, as amended. The Friedkin Plan may be

served with process by serving its registered agent: Michelle Byrd, 1375 Enclave Parkway Houston, Texas 77077.

38.     Defendant Torque Tools Inc Health Plan (the "Torque Plan") is a self-funded health plan subject to Section 6001 of FFCRA, as amended. The Torque Plan may be served with process by serving its registered agent: Geri Gulitti, 9421 FM 2920 Bldg. 2, Tomball, Texas 77375.

39.     Defendant UPS Health and Welfare Plan (the "UPS Plan") is a self-funded health plan subject to Section 6001 of FFCRA, as amended. The UPS Plan may be served with process by serving its registered agent: Kenneth Brown, C S C Lawyers Incorporating Service Company 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

40.     Defendant Walmart Inc. Associates Health and Welfare Plan (the "Walmart Plan") is a self-funded health plan subject to Section 6001 of FFCRA, as amended. The Walmart Plan may be served with process by serving its registered agent: CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, Texas 75201-3136.

41.     Defendant Restated Zions Bancorp. Employee and Retiree Welfare Benefit Plan (the "Zions Plan") is a self-funded health plan subject to Section 6001 of FFCRA, as amended. The Zions Plan may be served with process by serving its registered agent: Ryan Hill, C S C Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

42.     Defendant Accenture United States Group Health Plan (the "Accenture Plan") is a self-funded health plan subject to Section 6001 of FFCRA, as amended. The Accenture Plan may be served with process by serving its registered agent: Attn: Wynn Pott, Corporate Creations Network, Inc., 5444 Westheimer #1000, Houston, Texas 77056.

43.     Defendant Alight Solutions LLC Health And Welfare Plan (the "Alight Plan") is a self-funded health plan subject to Section 6001 of FFCRA, as amended. The Alight Plan may be

served with process by serving its registered agent: Joanne Rich, C S C-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Dallas, Texas 75201-3136.

44.    Defendant American International Group, Inc. Medical Plan (the "AIG Plan") is a self-funded health plan subject to Section 6001 of FFCRA, as amended. The AIG Plan may be served with process by serving its registered agent: Justin Orlando, 4557 Arlen Drive, Plano, Texas 75093.

45.    Defendant Aramco U. S. Welfare Benefit Plan (the "Aramco Plan") is a self-funded health plan subject to Section 6001 of FFCRA, as amended. The Aramco Plan may be served with process by serving its registered agent: Ronald Charles CT Corporation System 1999 Bryan St., Ste. 900, Dallas, Texas 75201-3136.

46.    Defendant Collabera Inc. 125 Benefit Plan (the "Collabera Plan") is a self-funded health plan subject to Section 6001 of FFCRA, as amended. The Collabera Plan may be served with process by serving its registered agent: Adriana Glickman Blumberg Excelsior Corporate Services, Inc., 725 Decker Prairie Drive, Austin, Texas 78748.

47.    Defendant Educational Testing Service Welfare Benefits Plan, (the "ETS Plan") is a self-funded health plan subject to Section 6001 of FFCRA, as amended. The ETS Plan may be served with process by serving its registered agent: Vincent Logiudice Corporation Service Company Lawyers Incorporating Service Company 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

48.    Defendant KPMG LLP Health Plans. (the "KPMG Plan") is a self-funded health plan subject to Section 6001 of FFCRA, as amended. The KPMG Plan may be served with process by serving its registered agent: Jennyrose Lisena, CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, Texas 75201-3136.

49.     Defendant Mann Eye Center PA Health And Welfare Plan (the "Mann Plan") is a self-funded health plan subject to Section 6001 of FFCRA, as amended. The Mann Plan may be served with process by serving its registered agent: Moira Long, 5115 Main St, Ste 300, Houston, Texas 77002-9768.

50.     Defendant Paychex Business Solutions LLC Employee Benefit Plan (the "Paychex Plan") is a self-funded health plan subject to Section 6001 of FFCRA, as amended. The Paychex Plan may be served with process by serving its registered agent: Teresa Carrol, CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, Texas 75201-3136.

51.     Defendant R & L Carriers Group Benefits Plan (the "R & L Plan") is a self-funded health plan subject to Section 6001 of FFCRA, as amended. The R & L Plan may be served with process by serving its registered agent: Michael Shroyer, CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, Texas 75201-3136

52.     Defendant Sap America Health & Welfare Plan (the "Sap Plan") is a self-funded health plan subject to Section 6001 of FFCRA, as amended. The Sap Plan may be served with process by serving its registered agent: Jeff Bergin, CT Corp. System,1999 Bryan St., Ste. 900, Dallas, Texas 75201-3136.

53.     Defendant Technology Services Group, LLC Employee Benefits Plan (the "TSG Plan") is a self-funded health plan subject to Section 6001 of FFCRA, as amended. The TSG Plan may be served with process by serving its registered agent: Jeff Reva CT Corporation System,1999 Bryan St., Ste. 900, Dallas, Texas 75201-3136.

54.     Defendant Tetra Tech, Inc. Fully Insured HMO Benefit Plan (the "Tetra Plan") is a self-funded health plan subject to Section 6001 of FFCRA, as amended. The Tetra Plan may be

served with process by serving its registered agent: Debbie Freeman, Capitol Corporate Services, Inc., 206 E 9th ST., Suite 1300, Austin, Texas 78701.

55.    Defendant Trinet Group, INC. (the "Trinet Plan") is a self-funded health plan subject to Section 6001 of FFCRA, as amended. The Trinet Plan may be served with process by serving its registered agent: Brady Mickelsen, 2233 FM 1960 East, Houston, Texas 77073.

56.    Defendant United Airlines Consolidated Welfare Benefit Plan (the "UAC Plan") is a self-funded health plan subject to Section 6001 of FFCRA, as amended. The UAC Plan may be served with process by serving its registered agent: Richard Mayes, CT Corporation System 1999 Bryan St., Ste. 900, Dallas, Texas 75201-3136.

57.    Defendant Wyndham Hotels & Resorts Health and Welfare Plan (the "Wyndham Plan") is a self-funded health plan subject to Section 6001 of FFCRA, as amended. The Wyndham Plan may be served with process by serving its registered agent: Monica Melancon Corporate Creations Network Inc., 5444 Westheimer #1000, Houston, Texas 77056.

58.    Defendant Aarthun Performance Group LTD Health Plan (the "Aarthun Plan") is a self-funded health plan subject to Section 6001 of FFCRA, as amended. The Aarthun Plan may be served with process by serving its registered agent: Wendi Fitler, Aarthun Management INC. 20329 State Highway 249, Ste. 210, Houston, Texas 77070.

59.    Defendant Agility Recovery Solutions, Inc. Health and Welfare Plan (the "ARS Plan") is a self-funded health plan subject to Section 6001 of FFCRA, as amended. The ARS Plan may be served with process by serving its registered agent: Tom Parker, C S C Lawyers Incorporating Service Company 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218

60.    Defendant American Air Liquide Holdings INC. Health Plan (the "AALH Plan") is a self-funded health plan subject to Section 6001 of FFCRA, as amended. The AALH Plan may

be served with process by serving its registered agent: Danielle Tolson, Capitol Corporate Services, Inc., 206 E. 9th Street, Suite 1300, Austin, Texas 78701-4411.

61.    Defendant Arkema INC. Health Plan (the "Arkema Plan") is a self-funded health plan subject to Section 6001 of FFCRA, as amended. The Arkema Plan may be served with process by serving its registered agent: Sandra Auffray, Corporation Service Company -Lawyers Incorporating Service Company 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

62.    Defendant C. V. Starr & Co. Health Plan (the "Starr Plan") is a self-funded health plan subject to Section 6001 of FFCRA, as amended. The Starr Plan may be served with process by serving its registered agent: Lynder S. Festa, CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, Texas 75201-3136.

63.    Defendant Cemex, Inc. Welfare Benefit Plan (the "Cemex Plan") is a self-funded health plan subject to Section 6001 of FFCRA, as amended. The Cemex Plan may be served with process by serving its registered agent: Susie Mejia, Corporate Creations Network Inc., 5444 Westheimer #1000, Houston, Texas 77056.

64.    Defendant Citigroup Legal Benefits Plan (the "Citigroup Plan") is a self-funded health plan subject to Section 6001 of FFCRA, as amended. The Citigroup Plan may be served with process by serving its registered agent: Lori Szerencsy, CT Corporation System 1999 Bryan St., Ste. 900, Dallas, Texas 75201-3136.

65.    Defendant Cox Enterprises, Inc. Welfare Benefit Plan (the "Cox Plan") is a self-funded health plan subject to Section 6001 of FFCRA, as amended. The Cox Plan may be served with process by serving its registered agent: Jon Gamble, 26101 Brickhill Drive, Spring, Texas 77389.

66.     Defendant Deloitte & Touche Welfare Benefit Plan (the "D & T Plan") is a self-funded health plan subject to Section 6001 of FFCRA, as amended. The D & T Plan may be served with process by serving its registered agent: Anissa Nelson-Carlisle, Corporation Service Company - Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

67.     Defendant Enercon Services, Inc. Employee Health & Welfare Benefit Plan (the "Enercon Plan") is a self-funded health plan subject to Section 6001 of FFCRA, as amended. The Enercon Plan may be served with process by serving its registered agent: Attn: Jennifer Gilliam, CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, Texas 75201-3136.

68.     Defendant Entergy Corporation Companies' Bargaining Employees' Welfare Benefit Trust (the "Entergy Plan") is a self-funded health plan subject to Section 6001 of FFCRA, as amended. The Entergy Plan may be served with process by serving its registered agent: Attn: Kimberly Fontan / Paul A. Scheurich, 350 Pine Street, Beaumont, Texas 77701.

69.     Defendant First Community Bancshares, Inc. Employee Benefit Plan (the "FCB Plan") is a self-funded health plan subject to Section 6001 of FFCRA, as amended. The FCB Plan may be served with process by serving its registered agent: Attn: James Meredith, 507 North Gray Street, Killeen, Texas 76540.

70.     Defendant HCA Inc. And Welfare Benefits Plan (the "HCA Plan") is a self-funded health plan subject to Section 6001 of FFCRA, as amended. The HCA Plan may be served with process by serving its registered agent: Attn: Sherri Henry, CT Corporation System 1999 Bryan St., Ste. 900, Dallas, Texas 75201-3136.

71.     Defendant Hilton Worldwide Health Plan (the "Hilton Plan") is a self-funded health plan subject to Section 6001 of FFCRA, as amended. The Hilton Plan may be served with process

by serving its registered agent: Attn: Vikram Malhotra, C S C - Lawyers Incorporating Service Company 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

72.     Defendant Infosys BPM Limited Health Plan (the "Infosys Plan") is a self-funded health plan subject to Section 6001 of FFCRA, as amended. The Infosys Plan may be served with process by serving its registered agent: Juan Almodovar Ramirez, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

73.     Defendant Inframark, LLC Welfare Benefit Wrap Plan (the "Inframark Plan") is a self-funded health plan subject to Section 6001 of FFCRA, as amended. The Inframark Plan may be served with process by serving its registered agent: Attn: Marnie R. Vauchan, Corporation Service Company Lawyers Incorporating Service Company 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

74.     Defendant International Cellulose Corporation Health Plan (the "ICC Plan") is a self-funded health plan subject to Section 6001 of FFCRA, as amended. The ICC Plan may be served with process by serving its registered agent: Barry Wilken, Cogency Global INC. 1601 Elm St., Suite 4360, Dallas, Texas 75201.

75.     Defendant Invesco Health Plan (the "Invesco Plan") is a self-funded health plan subject to Section 6001 of FFCRA, as amended. The Invesco Plan may be served with process by serving its registered agent: Attn: Paul Spriggs, 4000 Santa Olivia, Mission, Texas 78572-8617.

76.     Defendant Iqvia Inc. Health Plan (the "Iqvia Plan") is a self-funded health plan subject to Section 6001 of FFCRA, as amended. The Iqvia Plan may be served with process by serving its registered agent: Diane Best, Corporation Service Company Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

77.     Defendant The Iron Mountain Companies Welfare Plan (the "Iron Plan") is a self-funded health plan subject to Section 6001 of FFCRA, as amended. The Iron Plan may be served with process by serving its registered agent Attn: Tracey Crowell, Corporation Service Company Lawyers Incorporating Service Company 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

78.     Defendant Lawler Foods, LTD. Health & Welfare Plan (the "Lawler Plan") is a self-funded health plan subject to Section 6001 of FFCRA, as amended. The Lawler Plan may be served with process by serving its registered agent: Attn: Chris Rogers, CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, Texas 75201-3136.

79.     Defendant Leidos Employee Health and Welfare Benefits Plan (the "Leidos Plan") is a self-funded health plan subject to Section 6001 of FFCRA, as amended. The Leidos Plan may be served with process by serving its registered agent: Karen F. Kanjian, CT Corp System 1999 Bryan St., Ste. 900, Dallas, Texas 75201-3136.

80.     Defendant Lockheed Martin Corporation Basic Benefit Plan For Hourly Employees (the "Lockheed Plan") is a self-funded health plan subject to Section 6001 of FFCRA, as amended. The Lockheed Plan may be served with process by serving its registered agent: Robert Mueningghoff, Corporation Service Company Lawyers Incorporating Service Company 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

81.     Defendant Magellan Health & Welfare Plan (the "Magellan Plan") is a self-funded health plan subject to Section 6001 of FFCRA, as amended. The Magellan Plan may be served with process by serving its registered agent: Peter Devries, Cogency Global INC., 1601 Elm Street, Suite 4360, Dallas, Texas 75201-3136.

82.     Defendant Mccombs Enterprises Health Plan (the "Mccombs Plan") is a self-funded health plan subject to Section 6001 of FFCRA, as amended. The Mccombs Plan may be

served with process by serving its registered agent: Lawrence Mccombs, 622 Power Street, Corpus Christi, Texas 78403.

83.      Defendant Mitsubishi Electric U.S. Companies Health And Welfare Plan (the "Mitsubishi Plan") is a self-funded health plan subject to Section 6001 of FFCRA, as amended. The Mitsubishi Plan may be served with process by serving its registered agent: Jared Baker, CT Corporation System 1999 Bryan St., Ste. 900, Dallas, Texas 75201-3136.

84.      Defendant Nustar Omnibus Welfare Plan (the "Nustar Plan") is a self-funded health plan subject to Section 6001 of FFCRA, as amended. The Nustar Plan may be served with process by serving its registered agent: Liz Villareal  CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, Texas 75201-3136.

85.      Defendant Occidental Petroleum Corporation Welfare Plan (the "Occidental Plan") is a self-funded health plan subject to Section 6001 of FFCRA, as amended. The Occidental Plan may be served with process by serving its registered agent:  Attn: Madelaine N Pfahler, CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, Texas 75201-3136.

86.      Defendant Opko Health, Inc. Health and Welfare Plan (the "Opko Plan") is a self-funded health plan subject to Section 6001 of FFCRA, as amended. The Opko Plan may be served with process by serving its registered agent: Ilene Nelson  Corporation Service Company Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

87.      Defendant Repsol USA Holdings Corporation-Welfare Plans (the "Repsol Plan") is a self-funded health plan subject to Section 6001 of FFCRA, as amended. The Repsol Plan may be served with process by serving its registered agent: Kelly Sniher, Capitol Corporate Services, INC., 206 E 9TH ST., Suite 1300, Austin, Texas 78701.

88.     Defendant Salesforce.com Health And Welfare Plan (the "Salesforce Plan") is a self-funded health plan subject to Section 6001 of FFCRA, as amended. The Salesforce Plan may be served with process by serving its registered agent Attn: Kimberly Coleman, CT Corporation System 1999 Bryan St., Ste. 900, Dallas, Texas 75201-3136.

89.     Defendant Shi International Corp. Health And Welfare Plan (the "Shi Plan") is a self-funded health plan subject to Section 6001 of FFCRA, as amended. The Shi Plan may be served with process by serving its registered agent Attn: Michael Haluska, CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, Texas 75201-3136.

90.     Defendant Snap-on incorporated Non-Union Retiree Health and Welfare Benefit Plan (the "Snap-on Plan") is a self-funded health plan subject to Section 6001 of FFCRA, as amended. The Snap-on Plan may be served with process by serving its registered agent Attn: Sandra Jones, CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, Texas 75201-3136.

91.     Defendant T-Mobile USA, Inc. Employee Benefit Plan (the "T-Mobile Plan") is a self-funded health plan subject to Section 6001 of FFCRA, as amended. The T-Mobile Plan may be served with process by serving its registered agent: Kate Balylock, Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

92.     Defendant Transwestern Commercial Services Comprehensive Health And Welfare Benefit Plan (the "Transwestern Plan") is a self-funded health plan subject to Section 6001 of FFCRA, as amended. The Transwestern Plan may be served with process by serving its registered agent: Richard Graton, CT Corporation System 1999 Bryan St., Ste. 900, Dallas, Texas 75201-3136.

93.     Defendant Trinity University Welfare Benefit Plan (the "Trinity Plan") is a self-funded health plan subject to Section 6001 of FFCRA, as amended. The Trinity Plan may be served

with process by serving its registered agent: Gary Logan, Capitol Corporate Services, Inc., 206 E. 9th St., Ste. 1300, Austin, Texas 78701-4411.

94.     Defendant William Marsh Rice University Health And Welfare Plan (the "WMRU Plan") is a self-funded health plan subject to Section 6001 of FFCRA, as amended. The WMRU Plan may be served with process by serving its registered agent: Joan Nelson / Richard A Zansitis, 6100 Main St MS 94, Houston, Texas 77005.

95.     Defendant Decypher Technologies Employee Benefits Plan (the "Decypher Plan") is a self-funded health plan subject to Section 6001 of FFCRA, as amended. The Decypher Plan may be served with process by serving its registered agent:  Caroline S. Meador, 200 Concord Plaza Dr., Ste 780, San Antonio, Texas 78216.

## JURISDICTION AND VENUE

96.     This Court has federal question subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1131, as 24 Hour Covid asserts federal claims against Aetna and the Employer Plans in Count I under the FFCRA and the CARES Act and against Aetna in Counts II and III under the FFCRA.

97.     The Court has personal jurisdiction over the parties because 24 Hour Covid submits to the jurisdiction of this Court, and Aetna systemically and continuously conducts business in the State of Texas and otherwise has minimum contacts with the State of Texas sufficient to establish personal jurisdiction over it.

98.     This Court also has supplemental jurisdiction over 24 Hour Covid's state law claims against Aetna, in Counts IV and V because these claims are so related to 24 Hour Covid's federal claims that the state law claims form a part of the same case or controversy under Article III of the United States Constitution. The Court has supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367(a).

99.     Venue is appropriate under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this district. 24 Hour Covid alleges that Aetna violated the FFCRA and the CARES Act within the District Court of Texas.

[INTENTIONALLY LEFT BLANK]

**STATEMENT OF FACTS**

**I.      BACKGROUND AS TO THE FFCRA AND THE CARES ACT**

100.    Pursuant to Section 319 of the Public Health Service Act, on January 31, 2020, the Secretary of Health and Human Services ("HHS") issued a determination that a Public Health Emergency exists and has existed as of January 27, 2020, due to confirmed cases of COVID-19 being identified in this country.[6]

101.    On March 13, 2020, the President issued Proclamation 9994 declaring a National Emergency concerning the COVID-19 outbreak with a determination that a national emergency exists nationwide, pursuant to Section 501(b) of the Robert T. Stafford Disaster Relief and Emergency Assistance Act.

*a.      Private Health Plans Subject to Section 6001 of the FFCRA*

102.    Congress passed Section 6001 the FFCRA and Section 3202 of the CARES Act to, amongst other things, require group health plans and health insurance issuers offering group or individual health insurance coverage to: (i)  provide benefits for certain items and services related to diagnostic testing for the detection or diagnosis of COVID-19 without the imposition of any cost-sharing requirements (*i.e.* deductibles, copayments, and coinsurance) or prior authorization or other medical management requirements;[7] and (ii) to reimburse any provider for COVID-19 diagnostic testing an amount that equals the negotiated rate or, if the plan or issuer does not have a negotiated rate with the provider (*e.g.* 24 Hour Covid), the cash price for such service that is listed by the provider on its public website in accordance with 45 CFR § 182.40.[8]

---

[6] *See* https://www.phe.gov/emergency/news/healthactions/phe/Pages/2019-nCoV.aspx (Determination that a Public Health Emergency Exists).
[7] Pub. L. No. 116-127 (2020).
[8] Pub. L. No. 116-136 (2020).

103.    To further clarify to issuers and health plans their legal expectations when processing a claim for Covid Testing in accordance with the FFCRA and the CARES Act, the Department of Labor ("DOL"), the Department of Health and Human Services ("HHS"), and the Department of the Treasury (the "Treasury") (collectively, the "Departments") jointly prepared and issued a series of Frequently Asked Questions ("FAQs") to address any stakeholder questions or concerns pertaining to the proper adjudication of Covid Testing claims. <u>The following FAQs summarize the health plan and issuers' obligations as it pertains to covering and paying for Covid Testing services during the public health emergency</u>:

**The Departments FAQ, Part 42, Q1**: *Which types of group health plans and health insurance coverage are subject to section 6001 of the FFCRA, as amended by section 3201 of the CARES Act?*

Section 6001 of the FFCRA, as amended by section 3201 of <u>the CARES Act, applies to group health plans and health insurance issuers offering group or individual health insurance coverage</u> (including grandfathered health plans as defined in section 1251(e) of the Patient Protection and Affordable Care). The term "group health plan" includes both insured and self-insured group health plans. It includes private employment-based group health plans (ERISA plans), non-federal governmental plans (such as plans sponsored by states and local governments), and church plans.

"Individual health insurance coverage" includes coverage offered in the individual market through or outside of an Exchange, as well as student health insurance coverage (as defined in 45 CFR 147.145).[9]

**The Departments FAQ, Part 42, Q3**: *What items and services must plans and issuers provide benefits for under section 6001 of the FFCRA?*

Section 6001(a) of the FFCRA, as amended by Section 3201 of the CARES Act, requires <u>plans and issuers to provide coverage for</u> the following items and services:

(1) <u>An in vitro diagnostic test</u> as defined in section 809.3 of the title 21, Code of Federal Regulations, (or its successor regulations) for the detection of SARS-CoV-2 or the <u>diagnosis of COVID-19</u>, and the administration of such a test, that - …

B. The developer has requested, or intends to request, emergency use authorization under section564 of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 360bbb-3), unless and until the emergency use authorization request under such section 564 has been denied or the developer of such test does not submit a request under such section within a reasonable timeframe;…[10]

---

[9] *See* https://www.cms.gov/files/document/FFCRA-Part-42-FAQs.pdf.
[10] *Id*.

**The Departments FAQ, Part 42, Q6**: *May a plan or issuer impose any cost-sharing requirements, prior authorization requirements, or other medical management requirements for benefits that must be provided under section 6001(a) of the FFCRA, as amended by section 3201 of the CARES Act?*

<u>No</u>. Section 6001(a) of the FFCRA provides that plans and issuers shall not impose any cost-sharing requirements (including deductibles, copayments, and coinsurance), prior authorization requirements, or other medical management requirements for these items and services. <u>These items and services must be covered without cost sharing when medically appropriate for the individual, as determined by the individual's attending healthcare provider in accordance with accepted standards of current medical practice</u>.[11]

**The Departments FAQ, Part 42, Q7**: *Are plans and issuers required to provide coverage for items and services that are furnished by providers that have not agreed to accept a negotiated rate as payment in full (i.e., out-of-network providers)?*

<u>Yes</u>. Section 3202(a) of the CARES Act provides that a plan or issuer providing coverage of items and services described in section 6001(a) of the FFCRA shall reimburse the provider of the diagnostic testing as follows: …

2. <u>If the plan or issuer does not have a negotiated rater with such provider, the plan or issuer shall reimburse the provider in an amount that equals the cash price for such service as listed by the provider on a public internet website, or the plan or issuer may negotiate a rate with the provider for less than such cash price</u>…[12]

**The Departments FAQ, Part 43, Q9**: *Does Section 3202 of the CARES Act protect participants, beneficiaries, and enrollees from balance billing for a COVID-19 diagnostic test?*

The Departments read the requirement to provide coverage without cost sharing in section 6001 of the FFCRA, together with <u>section 3202(a) of the CARES Act establishing a process for setting reimbursement rates, as intended to protect participants, beneficiaries, and enrollees from being balance billed for an applicable COVID-19 test. Section 3202(a) contemplates that a provider of COVID-19 testing will be reimbursed either a negotiated rate or an amount that equals the cash price for such service that is listed by the provider on a public website.</u> In either case, the amount the plan or issuer reimburses the provider constitutes payment in full for the test, with no cost sharing to the individual or other balance due. Therefore, the statute generally precludes balance billing for COVID-19 testing. However, section 3202(a) of the CARES Act does not preclude balance billing for items and services not subject to section 3202(a), although balance billing may be prohibited by applicable state law and other applicable contractual agreements.[13]

---

[11] *Id*.

[12] *Id*.

[13] *See* https://www.cms.gov/files/document/FFCRA-Part-43-FAQs.pdf; *See also* FAQ Part 43 Q12: … Because the Departments interpret the provisions of section 3202 of the CARES Act as specifying a rate that generally protects participants, beneficiaries, and enrollees from balance billing for a COVID-19 test (see Q9 above), the requirement to pay the greatest of three amounts under the regulations implementing section 2719A of the PHS Act is superseded by the requirements of section 3202(a) of the CARES Act with regard to COVID-19 diagnostic tests that are out-of-network emergency services. For these services, the plan or issuer must reimburse an out-of-network provider of COVID-19 testing an amount that equals the cash price for such service that is listed by the provider on a public website, or the plan or issuer may negotiate a rate that is lower than the cash price.

**The Departments FAQ, Part 44, Q1**: *Under the FFCRA, can plans and issuers use medical screening criteria to deny (or impose cost sharing on) a claim for COVID-19 diagnostic testing for an asymptomatic person who has no known or suspected exposure to COVID-19?*

<u>No</u>. The FFCRA prohibits plans and issuers from imposing medical management, including specific medical screening criteria, on coverage of COVID-19 diagnostic testing. Plans and issuers cannot require the presence of symptoms or a recent known or suspected exposure, or otherwise impose medical screening criteria on coverage of tests.

<u>When an individual seeks and receives a COVID-19 diagnostic test from a licensed or authorized health care provider, or when a licensed or authorized health care provider refers an individual for a COVID-19 diagnostic test, plans and issuers generally must assume that the receipt of the test reflects an "individualized clinical assessment" and the test should be covered</u> without cost sharing, prior authorization, or other medical management requirements.[14]

**The Departments FAQ, Part 44, Q3**: *Under the FFCRA, are plans and issuers required to cover COVID-19 diagnostic tests provided through state- or locality-administered testing sites?*

Yes. As stated in FAQs Part 43, Q3, any health care provider acting within the scope of their license or authorization can make an individualized clinical assessment regarding COVID-19 diagnostic testing. If an individual seeks and receives a COVID-19 diagnostic test from a licensed or authorized provider, including from a state- or locality-administered site, a "drive-through" site, and/or a site that does not require appointments, plans and issuers generally must assume that the receipt of the test reflects an "individualized clinical assessment."[15]

**The Departments FAQ, Part 44, Q5**: *What items and services are plans and issuers required to cover associated with COVID-19 diagnostic testing? What steps should plans and issuers take to help ensure compliance with these requirements?*

… Plans and issuers should maintain their claims processing and other information technology systems in ways that protect participants, beneficiaries, and enrollees from inappropriate cost sharing and should document any steps that they are taking to do so…[16]

104.    To supplement the FAQs publicized by the Departments, the Internal Revenue Service (the "IRS") issued Notice 2020-15 pertaining to high deductible health plans ("HDHPs") and expenses related to COVID-19 to provide members of HDHPs (including those HDHPs administered by the Aetna) the confidence that Covid Testing will be covered, in full, by their HDHP. Notice 2020-15 states as follows:

---

[14] *See* https://www.cms.gov/files/document/faqs-part-44.pdf.
[15] *Id.*
[16] *Id.*

[d]ue to the unprecedented public health emergency posed by COVID-19, and the need to eliminate potential administrative and financial barriers to testing for and treatment of COVID-19 [emphasis added], a health plan that otherwise satisfies the requirements to be an HDHP under section 223(c)(2)(A) will not fail to be an HDHP merely because the health plan provides medical care services and items purchased related to testing for and treatment of COVID-19 prior to the satisfaction of the applicable minimum deductible.

105.    In addition to the federal guidance publicized by the Departments, the Texas Department of Insurance ("TDI") issued Commissioner's Bulletin # B-0017-20, which also pertains to coverage for COVID-19 testing and network adequacy. In this Bulletin, TDI mandates exclusive provider networks ("EPOs") and health maintenance organizations ("HMOs") to comply with the Covid Testing adjudication requirements of the FFCRA and the CARES Act, and "instructs health plans to pay a provider's negotiated rate or, if a health plan does not have a negotiated rate with the provider, pay the provider's publicly available cash price for testing [emphasis added]."[17]

   b.    *Medicare Advantage Health Plans Subject to Section 6003 of the FFCRA*

106.    Section 6003 of the FFCRA adds laboratory testing for the detection of SARS-CoV-2 or the diagnosis of COVID-19 and testing related services to the list of Medicare Advantage benefits for which cost-sharing charged to an enrollee cannot exceed the cost sharing required for those services under Parts A and B. Since Section 6002 of the FFCRA eliminates cost sharing for these benefits under Parts A and B, Medicare Advantage health plans may not impose cost sharing

---

[17] In an inquiry posed by 24 Hour Covid to TDI pertaining to the applicability of Commissioner's Bulletin #B-0017-20 to PPO and POS plans, TDI states the following: "Yes, it is TDI's position that PPO and POS plans must also comply with FFCRA and the 'CARES Act' … Commissioner's Bulletin #B-0017-20 made it expressly clear that in-network based plans, "insurers offering exclusive provider networks (EPOs) and health maintenance organizations (HMOs)… fall within the federal definitions for group health plans or health insurance issuers offering group or individual health insurance coverage." Presumably, the purpose of the bulletin was to expressly clarify for network-based plans such as EPOs and gated HMO plans our expectation to protect consumers regardless of network affiliation, as contemplated by the CARES Act and by Texas' laws. PPO and EPO issuers are subject to but not limited to Texas Insurance Code (TIC) Chapter 1301. HMOs may issue POS plans as required under TIC Chapter 1273. As PPO and POS plans are captured under the terms "issuer", "HMO", "group health plans", "health insurance issuers", and "individual health insurance coverage"; PPO and POS plans are not excluded from compliance."

for: (i) any clinical diagnostic lab test administered during any portion of the COVID-19 emergency period for the detection of COVID-19 (including administration of the test or product); and (ii) specified COVID-19 testing related services (as defined above in Sec. 6002.).

107.    Section 6003 of the FFCRA states as follows:

**Section 6003. Coverage of Testing for COVID-19 at No Cost Sharing Under the Medicare Advantage Program**

(a) IN GENEREAL. – Section 1852(a)(1)(B) of the Social Security Act (42 U.S.C. 1395w-22(a)(1)(B) is amended -- …

… (B) by inserting after subclause (III) the following new subclauses:

"(IV) Clinical diagnostic laboratory test administered during any portion of the emergency period defined in paragraph (1)(B) of section 1135(g) beginning on or after the date of the enactment of the Families First Coronavirus Response Act for the detection of SARS-CoV-2 or the diagnosis of the virus that causes COVID-19 and the administration of such test.

"(V) Specified COVID-19 testing-related services (as described in section 1833(cc)(1)) for which payment would be payable under a specified outpatient payment provision described in section 1833(cc)(2)."; …

"(vi) Prohibition of Application of Certain Requirements for COVID-19 Testing. – In the case of a product or service described in subclause (IV) or (V), respectively, of clause (iv) that is administered or furnished during any portion of the emergency period described in such subclause beginning on or after the date of the enactment of this clause, <u>an MA plan may not impose any prior authorization or other utilization management requirements with respect to the coverage of such a product or service under such plan.</u>"[emphasis added].

*c.    Medicaid Managed Care Health Plans Subject to Section 6004 of the FFCRA*

108.    Section 6004 of the FFCRA requires that commencing on the enactment of the FFCRA and extending through the duration of the COVID-19 public health emergency, state Medicaid programs are required to cover in-vitro diagnostic testing for the detection of COVID-19 (including the costs of administering the testing) and for related services without the imposition of cost-share obligations.

109.    Section 6004 of the FFCRA states as follows:

**<u>Section 6004. Coverage at No Cost-Sharing of COVID-19 Testing under Medicaid and CHIP</u>**

(a)  MEDICAID. –

(1) IN GENERAL. – Section 1905(a)(3) of the Social Security Act (42 U.S.C. 1396d)a)(3)) is amended -- …

(C) by adding at the end the following new subparagraph:

"(B) in vitro diagnostic products (as defined in section 09.3(a) of title 21, Code of Federal Regulations) administered during any portion of the emergency period defined in paragraph (1)(B) of section 1135(g) beginning on or after the date of the enactment of this subparagraph for the detection of SARS-CoV-2 or the diagnosis of the virus that causes COVID- 19 that are approved, cleared, or authorized under section 510(k), 513, 515 or 564 of the Federal Food, Drug, and Cosmetic Act, and the administration of such in vitro diagnostic products;''.

(2) NO COST SHARING. –

(A) IN GENERAL. – Subsections (a)(2) and (b)(2) of section 1916 of the Social Security Act (42 U.S.C. 1396o) are each amended - …

(iii) by adding the following new subparagraphs:

"(F) any in vitro diagnostic product described in section 1905(a)(3)(B) that is administered during any portion of the emergency period described in such section beginning on or after the date of the enactment of this subparagraph (and the administration of such product), or

(G) COVID-19 testing related services for which payment may be made under the State Plan; and".

(B) APPLICATION TO ALTERNATIVE COST SHARING. – Section 1916A(b)(3)(B) of the Social Security Act (42 U.S.C. 1396o-1(b)(3)(B)) is amended by adding at the end of the following new clause:

"(xi) Any in vitro diagnostic product described in section 1905(a)(3)(B) that is administered during any portion of the emergency period described in such section beginning on or after the date of the enactment of this clause (and the administration of such product) and any visit described in section 1916(a)(2)(G) that is furnished during any such portion.''.

## II.      AETNA'S NONCOMPLIANCE WITH THE FFCRA AND THE CARES ACT

### a.      *Failure to Cover and Reimburse Private Health Plan Covid Testing Claims in Violation of Sections 6001, 6003, and 6004 of the FFCRA and Section 3202(a) of the CARES Act.*

110.    For all private health plans subject to Section 6001 of the FFCRA, as amended, Aetna acts in one of the following two capacities: (i) the insurer of fully-insured health plans or the (ii) third-party claims administrator of self-funded health plans (*e.g.* the Employer Plans).

111.    All members of these private health plans received Covid Testing services from 24 Hour Covid that were determined to be medically necessary by a medical practice/physician prior to 24 Hour Covid providing any Covid Testing services.

112.    After Covid Testing services were provided to members of private Aetna health plans, 24 Hour Covid timely submitted claims to Aetna for reimbursement. 24 Hour Covid provided such services in good faith, and, as such, reasonably expected a fair and timely payment in return from Aetna. As detailed above, Section 6001 of the FFCRA requires mandatory coverage of Covid Testing services and Section 3202(a) of the CARES Act requires health plans and issuers to pay OON Covid Testing providers either: (i) cash prices as publicized by the providers or (ii) a negotiated amount.

113.    Aetna not only failed to cover nearly a thousand Covid Testing claims of members of private Aetna health plans despite the FFCRA's mandate to cover such services, but, for the Covid Testing claims that it did reimburse 24 Hour Covid for, Aetna failed to reimburse 24 Hour Covid at either a negotiated rate or at the cash price as publicized by 24 Hour Covid in violation of the CARES Act.

114.    *Critically*, despite the fact that Section 3202(a) of the CARES Act places the onus on private health plans to negotiate rates with OON providers for Covid Testing reimbursement or

otherwise pay OON providers their cash prices as publicized on their websites, 24 Hour Covid

solely made every good faith effort to engage Aetna to negotiate. Aetna did not respond to a single

offer for negotiation made by 24 Hour Covid including an invitation to mediate made by 24 Hour

Covid immediately preceding the filing of this Original Complaint.

115.     As detailed below, 24 Hour Covid exhausted every option to attempt to negotiate

with Aetna prior to bringing this action.

116.     The following is a timeline of 24 Hour Covid's good faith efforts to attempt to

negotiate and resolve all outstanding issues with Aetna:

    a.   Letter to Aetna's Legal Department and General Counsel, William J. Casazza, dated April 14, 2021 (the "Initial Aetna Negotiation Letter): Request to Aetna to Cease and Desist from the Unlawful Processing of Covid Testing Claims; Notice of Violation of the FFCRA, CARES Act, and other Applicable Laws; Request to Reprocess Unlawfully Processed Covid Testing Claims; and Request to Aetna for Good Faith Negotiations on Covid Testing Reimbursement.[18]

    b.   Email Correspondence to John B. Shely of Hunton Andrews Kurth, Aetna's outside counsel, dated December 20, 2021: Formal Notice of Exclusion from Aetna's Offsetting Program for Purposes of Recovering Purported Covid Testing Overpayments; Request to Aetna to Negotiate Reimbursement Rates for Covid Testing Claims; the Initial Aetna Negotiation Letter is Attached to this Email Correspondence.[19]

    c.   Letter to Aetna's Registered Agents dated December 21, 2021: Formal Notice of Exclusion from Aetna's Offsetting Program for Purposes of Recovering Purported Covid Testing Overpayments; Request to Aetna to Negotiate Reimbursement Rates for Covid Testing Claims; the Initial Aetna Negotiation Letter is Attached to this Email Correspondence.[20]

    d.   Letters to 136 Employer Plans dated April 2022 (the "Employer Plan Letter(s)"): Request to Employer Plans to Cease and Desist from the Unlawful Processing of Covid Testing Claims; Notice of Violation of the FFCRA, CARES Act, and other Applicable Laws; Request to Reprocess Unlawfully

---

[18] *See* Exhibit A (Letter to Aetna's Legal Department and General Counsel, William J. Casazza, dated April 14, 2021, and USPS Certified Mail Delivery Confirmation).

[19] *See* Exhibit B (Email Correspondence to John B. Shely of Hunton Andrews Kurth, Aetna's outside counsel, dated December 20, 2021).

[20] *See* Exhibit C (Letter to Aetna's Registered Agents dated December 21, 2021).

Processed Covid Testing Claims. The Employer Plan Letter was sent to all Employer Plans named in this Original Complaint, and a representative copy of the letter is attached to this Original Complaint as Exhibit D.[21]

e.  Letter to Aetna's National Law Account Department and Catherine B. Walsh, Vice President, Legal Services dated May 20, 2022: Notice of Failure to Comply with the FFCRA and the CARES Act in the Adjudication of COVID-19 Diagnostic Testing Claims; and Invitation to Mediate.[22]

117.    24 Hour Covid has clearly attempted to work in good faith with Aetna, but, unfortunately, no good deed goes unpunished. Not only has Aetna not reciprocated 24 Hour Covid's efforts, but Aetna has commenced with adverse benefit determinations for the majority of Covid Testing claims submitted by 24 Hour Covid. Aetna has and continues to act in bad faith and continues to act as if it can unilaterally implement and effectuate policies that directly conflict with the FFCRA and CARES Act.

118.    Aetna has failed to cover Covid Testing services in compliance with Sections 6001, 6003, and 6004 of the FFCRA and reimburse 24 Hour Covid in compliance with Section 3202(a) of the CARES Act for those Covid Testing claims subject to Section 6001 of the FFCRA. Through its failure to comply with these strict requirements, it has left numerous patients financially responsible for the balance between the amounts paid by the Aetna and the billed amount/cash price. The manner in which Aetna adjudicated patients' Covid Testing claims is in complete conflict with Congress and the Departments' intentions that no covered individual is to ever be left financially responsible for Covid Testing services as it pertains to their cost-sharing and balance-billing obligations. [23]

---

[21] *See* Exhibit D (Representative Copy of the Employer Plan Letter dated April 2022 and a List of Employer Plans the Employer Plan Letters have been Delivered to).

[22] *See* Exhibit E (Invitation to Mediate to Aetna dated May 20, 2022).

[23] The Departments FAQ, Part 43, Q9:
**Does Section 3202 of the CARES Act protect participants, beneficiaries, and enrollees from balance billing for a COVID-19 diagnostic test?**
The Departments read the requirement to provide coverage without cost sharing in section 6001 of the FFCRA, together with section 3202(a) of the CARES Act establishing a process for setting reimbursement rates, as intended

b. *Reason/Adjustment Codes Utilized by Aetna as Evidence of Aetna's Violations of the FFCRA and/or the CARES Act.*

119.    In addition to all of 24 Hour Covid's attempts to negotiate Covid Testing rates with Aetna, 24 Hour Covid notified Aetna of all of the different ways in which Aetna ia processing claims in violation of the FFCRA's requirements to cover Covid Testing claims and prohibitions against imposing patient cost-share obligations, prior authorization requirements, and other medical management requirements.[24] Also, for those Covid Testing claims specifically subject to Section 6001 of the FFCRA, 24 Hour Covid also notified Aetna of its failures to reimburse 24 Hour Covid in accordance with Section 3202(a) of the CARES Act.

120.    Moreover, in the same communications to Aetna, 24 Hour Covid implores Aetna to specifically respond as to why the reason/adjustment codes utilized by Aetna in its adverse benefit determinations[25] of Covid Testing claims are not violations of the FFCRA and/or the CARES Act even though the FFCRA specifically prohibits imposing patient cost-share obligations, prior authorization requirements, and other medical management requirements and the CARES Act sets forth a specific methodology for the reimbursement of Covid Testing claims.

121.    The following is an excerpt from the multiple letters sent to Aetna inquiring why Aetna has chosen to utilize improper reason/adjustment codes in its thousands of adverse benefit determinations of Covid Testing claims, notifying Aetna why the use of such reason/adjustment

---

to protect participants, beneficiaries, and enrollees from being balance billed for an applicable COVID-19 test. Section 3202(a) contemplates that a provider of COVID-19 testing will be reimbursed either a negotiated rate or an amount that equals the cash price for such service that is listed by the provider on a public website. In either case, the amount the plan or issuer reimburses the provider constitutes payment in full for the test, with no cost sharing to the individual or other balance due.

[24] *See* Exhibits A, B, C, and D.

[25] "**Adverse Benefit Determination**" means a denial, reduction of or a failure to provide or make payment, in whole or in part, for a benefit, including those based on a determination of eligibility, application of utilization review or medical necessity.

codes is improper, and imploring Aetna for a response in accordance with its duties as a fiduciary

of its health plans:

**II.     Unlawful Denial, Adjustment, and Remark Codes Utilized by Aetna to Justify Unlawful Adverse Benefit Determinations**

Below is a list of denial, adjustment, and remark codes utilized by Aetna that are improper given that it is an express violation of the FFCRA, the CARES Act, and applicable Texas insurance laws to impose any cost-sharing requirements (including deductibles, copayments, and coinsurance) or prior authorization or other medical management requirements and/or to not reimburse out-of-network providers the cash price publicized on their website. A combination of the below codes are being arbitrarily applied by Aetna across the vast majority of all claims submitted by 24 Hour Covid in order to justify its unlawful adverse benefit determinations.

- **CO-45**: Charges exceed your contracted/legislated fee arrangement.
  - ○ *Comment*: 24 Hour Covid is an out-of-network provider; therefore, no amount billed by 24 Hour Covid can exceed a contracted fee arrangement as there is no contracted fee arrangement between 24 Hour Covid and Aetna. Further, as it relates to Covid Testing, the legislated fee arrangement is the cash price of the services or a negotiated amount. Aetna has both failed to pay the cash price or negotiate an amount to be paid.

- **PI-226**: Information requested from the Billing/Rendering Provider was not provided or not provided timely or was insufficient/incomplete.
  - ○ *Comment*: The FFCRA and other supportive guidance materials issued by CMS and the DOL requires health plans and issuers to not impose medical management requirements on providers of Covid Testing; however, this request on 24 Hour Covid imposes a medical management requirement. Additionally, 24 Hour Covid is a lab and not the ordering medical professional; therefore, it unreasonable and burdensome for Aetna to request medical records/materials from 24 Hour Covid that it is under no obligation to maintain or be in possession of.

- **PI-242**: Services not provided by network/primary care providers.
  - ○ *Comment*: 24 Hour Covid is an out-of-network provider/laboratory; therefore, Aetna is correct that Covid Testing services were not provided by network/primary care providers. However, pursuant to the CARES Act, Aetna is required to pay either the cash price or negotiate an amount to be paid, which it has failed to do.

- **PR-45**: Charge exceeds fee schedule/maximum allowable or contracted/legislated fee arrangement.
  - ○ *Comment*: 24 Hour Covid is an out-of-network provider; therefore, no amount billed by 24 Hour Covid can exceed a contracted fee arrangement as there is no contracted fee arrangement between 24 Hour Covid and Aetna. Further, as it relates to Covid Testing, the fee schedule/maximum allowable/legislated fee arrangement is the cash price of the services or a negotiated amount. Aetna has both failed to pay the cash price or negotiate an amount to be paid.

- **PR-49**: This is a non-covered service because it is a routine/preventive exam or a diagnostic procedure done in conjunction with a routine/preventive exam.
  - ○ *Comment*: The FFCRA and other supportive guidance materials issued by CMS and the DOL require all health plans and issuers to cover Covid Testing claims; provided that, each test also includes a medical order/requisition from a treating licensed medical professional. Each and every Covid Testing claim submitted by 24 Hour Covid to Aetna was deemed medically necessary by a duly licensed medical professional based upon the presenting conditions, symptoms, and/or circumstances of the Aetna member and includes a medical order/requisition for Covid Testing. Please note, the FFCRA prohibits prior authorization and/or medical management requirements.

[CONTINUED ON NEXT PAGE]

- **PR-227**: Information requested from the patient/insured/responsible party was not provided or was insufficient/incomplete.
  - ○ *Comment*: The FFCRA and other supportive guidance materials issued by CMS and the DOL require all health plans and issuers to cover Covid Testing claims; provided that, each test also includes a medical order/requisition from a treating licensed medical professional. Each and every Covid Testing claim submitted by 24 Hour Covid to Aetna was deemed medically necessary by a duly licensed medical professional based upon the presenting conditions, symptoms, and/or circumstances of the Aetna member and includes a medical order/requisition for Covid Testing. The requirement for the patient/insured to

23330 US-59, Suite 300
Kingwood, Texas 77339

**Page 3 of 6**

produce information is improper and unduly burdensome. It is unlawful to condition the reimbursement of Covid Testing claims on the compliance of a patient/insured's requirement to produce information. Please note, the FFCRA prohibits prior authorization and/or medical management requirements.

122.     Based upon the above sampling of reason/adjustment codes utilized by Aetna, it is clear that Aetna has not been complying with the Covid Testing claims adjudication and reimbursement requirements as set forth in the FFCRA and the CARES Act. These reason/adjustment codes and many others are utilized by Aetna on all Covid Testing claims covered by its private, Medicare Advantage, and Medicaid Managed Care health plans.

     *c.*     *Improper Overpayment Determinations in Violation of the FFCRA and/or the CARES Act.*

123.     In any event that Aetna reimburses 24 Hour Covid in whole or in part for its Covid Testing services, there is no guarantee that Aetna will even allow 24 Hour Covid to keep any payments that Aetna has made to it. Not only does Aetna violate the FFCRA and/or the CARES

Act on the majority of Covid Testing claims submitted to it by 24 Hour Covid on behalf of Aetna members, Aetna has also shifted 100% of the risk of providing Covid Testing services to 24 Hour Covid because there is no guarantee that Aetna will not attempt to recover/recoup payments made to 24 Hour Covid through its improper overpayment notification and recovery practices.

124. By way of example, the following are representative of the overpayment notification reasons utilized by Aetna in the notice of overpayment letters being delivered to 24 Hour Covid at high volumes:

**Overpayment Reason:  The National Advantage Program discount of $37.50 was not applied to this claim.**

**Overpayment Reason:  The expense was considered under an incorrect payment methodology.**

Overpayment Reason:  We covered charges in excess of the reasonable and customary, or prevailing fee for procedure code(s) U0004.
Additional Comments:  In addition no payment should have been issued for procedure code G2023 since this service, when billed with procedure code U0004 is considered incidental and does not warrant separate reimbursement.

Overpayment Reason:  We incorrectly calculated the allowed amount because of a change in contract rate.  We should have allowed $123.46 and paid $123.46.

Overpayment Reason:  Benefits were issued for services specifically excluded by the member's plan. This plan has an exclusion for charges that require additional information for processing.

**Overpayment Reason:  We processed the claim incorrectly based on policy that was not followed..**

Overpayment Reason:  We covered charges in excess of the reasonable and customary, or prevailing fee for procedure code(s) U0004 and G2023.

Overpayment Reason:  Procedure code(s) G2023, when billed with procedure code(s) U0004 is considered incidental and does not warrant separate reimbursement.
Additional Comments:  We also processed this claim using an incorrect allowed amount.

125. Before analyzing the overpayment notifications and requests for refunds, it is important to note that the vast majority of Aetna members' Covid Testing claims were paid at an arbitrarily determined methodology and/or internal policy that does not align with the requirements of Section 3202(a) of the CARES Act. All of the above referenced overpayment reasons conflict with the Congressional methodology that should be utilized by Aetna in determining the proper reimbursements to be paid to 24 Hour Covid during the public health emergency.

126.     Regardless, though these Aetna members' Covid Testing claim were initially paid in part, albeit at unilaterally determined rates, Aetna is now demanding that 24 Hour Covid refund the full or a substantial amount of payment it received for providing bona fide Covid Testing services for a reason that has no application to how the claim should have been initially processed.

127.     It is unclear how Aetna can initially adjudicate Covid Testing claims at rates that it has unilaterally and arbitrarily determined especially since 24 Hour Covid has never had a contract with Aetna and Aetna refuses to negotiate rates with 24 Hour Covid, pay these unilaterally and arbitrarily determined rates to 24 Hour Covid then unilaterally and arbitrarily determine that it has overpaid 24 Hour Covid by the full or substantial amounts that it has unilaterally and arbitrarily determined, and then pressure and coerce 24 Hour Covid to repay the full or substantial amounts that it has been arbitrarily and unilaterally paid by Aetna so that 24 Hour Covid ends up with zero or very little reimbursement for Covid Testing services that it is Congressionally mandated to be reimbursed for.

128.     Because of this overpayment and recovery practice instituted by Aetna, 24 Hour Covid has no security that even if it is reimbursed for its Covid Testing services by Aetna that Aetna will not attempt to recover or recoup all reimbursements made to 24 Hour Covid; therefore, 24 Hour Covid has assumed all the risk of providing Covid Testing services which conflicts with the FFCRA and the CARES Act. The overpayment determinations and attempted recovery of such "overpayments" also constitutes coverage violations of the FFCRA and reimbursement violations of the CARES Act.

d.     *Inconsistent Adjudication of Covid Testing Claims Even within the Same Group Plans*

129.    Never mind the fact that Aetna has generally failed to process claims subject to Section 6001 of the FFCRA in compliance with Section 3202(a) of the CARES Act, but Aetna cannot even process Covid Testing claims that are a part of the same health plans or groups consistent with one another.

130.    By way of example, 24 Hour Covid has had approximately 78 Covid Testing encounters with members of the LyondellBasell Group Welfare Benefits Plan for which Lyondell Chemical Company acts as the Plan Sponsor (Group No. 070274204100101) These approximately 78 claims were adjudicated by Aetna to have 14 different outcomes, including denials and zero payments, while simultaneously utilizing inconsistent and unlawful reason/adjustment codes to justify such adverse benefit determinations, including, but not limited to:

- PI-242: Services not provided by network/primary care providers.

- PI-B15: This service/procedure requires that a qualifying service/procedure be received and covered.

- CO-45:   Charge   exceeds   fee   schedule/maximum   allowable   or contracted/legislated fee arrangement.

- PR-227: Information requested from the patient/insured/responsible party was not provided or was insufficient/incomplete.

131.    The inconsistent and arbitrary manner in which Aetna adjudicated the members of the LyondellBasell Group Welfare Benefits Plan claims is representative of the inconsistent and arbitrary manner in which Aetna adjudicated most, if not all of the Employer Plans' members' Covid Testing claims.

132.     Aetna has processed and adjudicated Covid Testing claims in all different manners and methods with exception to the actual Congressional mandates of Section 6601 of the FFCRA, as amended, and of Section 3202(a) of the CARES Act.

     *e.     Failure of Aetna's Meritless Internal Administrative Appeals Process to Factor in or Consider the FFCRA and/or the CARES Act in the Review of Appeals of Adverse Benefit Determinations of Covid Testing Claims.*

133.     Not only is Aetna not complying with the FFCRA and/or the CARES Act in its initial adjudication of Covid Testing claims and then attempting to unlawfully recover 100% of any payments made to 24 Hour Covid for rendering bona Covid Testing services, when 24 Hour Covid does appeal the adverse benefit determinations on behalf of Aetna members, Aetna's internal administrative appeals process does not even factor in or consider Aetna or the Employer Plans' requirements to comply with the FFCRA and/or the CARES Act.

134.     Over the course of the pandemic, 24 Hour Covid has submitted over 2000 appeals on behalf of members of Aetna health plans, and not a single Covid Testing claim was reconsidered by Aetna. More egregiously, despite the fact that 24 Hour Covid's appeal letters inform Aetna and its internal administrative appeals department of its requirements to comply with the FFCRA and the CARES Act,[26] Aetna overlooks the arguments and continues to uphold its initial determinations even though its initial determinations result in the non-coverage of Covid Testing claims and/or improper reimbursements to 24 Hour Covid.

135.     The paragraphs below provide a small sample of Aetna's responses to 24 Hour Covid's appeals that further evidence Aetna's blatant disregard or even attempts to comply with the FFCRA and/or the CARES Act.

---

[26] *See* Exhibit F (Representative Example of 24 Hour Covid's Appeal Letter Submitted on behalf of Aetna Members).

136.    Example 1 of Aetna's Appeals response is as follows:

We are upholding the original benefits determination for services described by code(s) U0004 and G2023. This claim was processed correctly. The provider is nonparticipating and reimbursement under this member's plan is based on 200 percent of the Medicare allowable amount. The Medicare rate-setting process takes into account the factors relevant to determining a fair rate level, such as the work required for each service and a physician's office expense. Payment was made based on the reported services, the prevailing fee, member eligibility, and all other plan provisions and limits, including co-pays, co-insurance, and deductibles, at the time the services were performed. We believe we have ensured that this is a fair payment for your service(s). As such, our original decision will remain unchanged.

137.    Example 1 of Aetna's appeal responses evidences Aetna's non-compliance with Section 6001 of the FFCRA and Section 3202(a) of the CARES Act for the following reasons: (i) Section 3202(a) of the CARES Act is the proper methodology to determine reimbursement for Covid Testing claims not a methodology that is stipulated in the member's health plan; and (ii) 24 Hour Covid's appeal letter provides Aetna with information that supports the utilization of a different methodology than the methodology utilized by Aetna in this appeal. It is clear here that Aetna did not look to or give any deference to the contents/arguments of 24 Hour Covid's appeal letter.

138.    Example 2 of Aetna's Appeals response is as follows:

Services described by code(s) U0004 on December 17, 2020. The claim is reimbursed using the Authorized Nonparticipating Fee Schedule, reimbursement is based on 125 percent of the Medicare allowable rate. Therefore, separate charges for code(s) U0004 are not eligible for payment.

139.    Example 2 of Aetna's appeal responses evidences Aetna's non-compliance with Section 6001 of the FFCRA and Section 3202(a) of the CARES Act for the following reasons: (i) Section 3202(a) of the CARES Act is the proper methodology to determine reimbursement for Covid Testing claims not a methodology that is based upon the Authorized Nonparticipating Fee Schedule where reimbursement is based on 125 percent of the Medicare allowable rate; (ii) 24 Hour Covid's appeal letter provides Aetna with information that supports the utilization of a different methodology than the methodology utilized by Aetna in this appeal It is clear here that

Aetna did not look to or give any deference to the contents/arguments of 24 Hour Covid's appeal letter.

140.   Example 3 of Aetna's Appeals response is as follows:

On 03/22/2021, we paid these services according to the member's plan benefits. The claim was processed under the member's Aetna Select plan, and network ID 00542. Therefore, our previous decision stands, and no further payment is due.

141.   Example 3 of Aetna's appeal responses evidences Aetna's non-compliance with Section 6001 of the FFCRA and Section 3202(a) of the CARES Act for the following reasons: (i) Section 3202(a) of the CARES Act is the proper methodology to determine reimbursement for Covid Testing claims not a methodology that is stipulated in the member's health plan; AND (ii) 24 Hour Covid's appeal letter provides Aetna with information that supports the utilization of a different methodology than the methodology utilized by Aetna in this appeal. It is clear here that Aetna did not look to or give any deference to the contents/arguments of 24 Hour Covid's appeal letter.

142.   Example 4 of Aetna's Appeals response is as follows:

We are upholding the original benefits determination for additional reimbursement for U0004. A review has determined that the service was paid correctly according to the Medicare hierarchy rating system of MCARE. Therefore, no further payment will be made.

143.   Example 4 of Aetna's appeal responses evidences Aetna's non-compliance with Section 6001 of the FFCRA and Section 3202(a) of the CARES Act for the following reasons: (i) Section 3202(a) of the CARES Act is the proper methodology to determine reimbursement for Covid Testing claims not a methodology that is determined on the Medicare hierarchy rating system of MCARE; and (ii) 24 Hour Covid's appeal letter provides Aetna with information that supports the utilization of a different methodology than the methodology utilized by Aetna in this appeal. It is clear here that Aetna did not look to or give any deference to the contents/arguments of 24 Hour Covid's appeal letter.

144.    Example 5 of Aetna's Appeals response is as follows:

**How we decide on the payment amount**
To determine the payment amount when the provider does not participate with us and the plan does not define the applicable allowable amount, our responsibility is to pay a fair amount for your services.

We set this payment at 125 percent of the Medicare allowable amount. The Medicare rate-setting process takes into account the factors relevant to determining a fair rate level, such as the work required for each service and a physician's office expense. State exceptions may apply.

145.    Example 5 of Aetna's appeal responses evidences Aetna's non-compliance with Section 6001 of the FFCRA and Section 3202(a) of the CARES Act for the following reasons: (i) Covid Testing claims should not be processed and adjudicated based upon what Aetna determines to be a "fair amount for services"; (ii) Section 3202(a) of the CARES Act is the proper methodology to determine reimbursement for Covid Testing claims <u>not</u> a methodology that is determined on Medicare allowable amounts; and (iii) 24 Hour Covid's appeal letter provides Aetna with information that supports the utilization of a different methodology than the methodology utilized by Aetna in this appeal. It is clear here that Aetna did not look to or give any deference to the contents/arguments of 24 Hour Covid's appeal letter.

146.    Example 6 of Aetna's appeal responses is as follows:

In regards to the disallowed amounts, your Explanation of Benefits states, "The member's plan provides benefits for covered expenses at the reasonable charge for the service in the geographical area where it is provided. In certain circumstances, especially where the service is unusual or not often provided in the geographical area, the reasonable charge may be determined by considering other factors, including the prevailing charge in other areas. You are not part of our network and therefore we cannot prevent you from billing the member for any balance. But if you do, we reserve the right to challenge your bill."

147.    Example 6 of Aetna's appeal responses evidences Aetna's non-compliance with Section 6001 of the FFCRA and Section 3202(a) of the CARES Act for the following reasons: (i) Covid Testing claims should not be processed and adjudicated based upon what Aetna determines to be a "reasonable charge for the service in the geographical area where it is provided"; (ii) Section 3202(a) of the CARES Act is the proper methodology to determine reimbursement for Covid Testing claims <u>not</u> a methodology that is determined on what Aetna determines to be reasonable;

and (iii) 24 Hour Covid's appeal letter provides Aetna with information that supports the utilization of a different methodology than the methodology utilized by Aetna in this appeal. It is clear here that Aetna did not look to or give any deference to the contents/arguments of 24 Hour Covid's appeal letter.

148.    Example 7 of Aetna's Appeals response is as follows:

> We are upholding the original benefits determination for We will not make an added payment to this claim. Here's why:
>
> This policy allows Aetna Market Fee Schedule. not reasonable and customary statistical data. If no rate is indicated for that particular rating system, then it defaults to the Reasonable and Equitable Fee (REF).
>
> This is the market fee schedule for the geographic area and may include different rates for different provider specialties and different places of service.
>
> REF may be either the rates referenced in a provider contract for all services, or as a default for services not listed in the provider's Compensation Schedule.

149.    Example 7 of Aetna's appeal responses evidences Aetna's non-compliance with Section 6001 of the FFCRA and Section 3202(a) of the CARES Act for the following reasons: (i) Section 3202(a) of the CARES Act is the proper methodology to determine reimbursement for Covid Testing claims not a methodology that is determined Aetna's market fee schedule for the geographic region; (ii) 24 Hour Covid's appeal letter provides Aetna with information that supports the utilization of a different methodology than the methodology utilized by Aetna in this appeal. It is clear here that Aetna did not look to or give any deference to the contents/arguments of 24 Hour Covid's appeal letter.

150.    Aetna's internal administrative appeals processes do not factor in or consider the applicable requirements of the FFCRA and the CARES Act, which further confirms Aetna's utter disregard of its obligations to comply with these Congressionally imposed mandates. Aetna represents in its policies, detailed below, that federal and state laws are factored into its review of claims and any applicable laws that conflict with its own policies will supersede its policies. On the contrary, it is clear these factors are not considered in the appeals stage either. The vast majority

of Aetna's responses make no reference or allusion to the FFCRA, the CARES Act, or the public health emergency, and, in the instances that Aetna does make reference to any of the aforementioned, Aetna's statements contradict and conflict with such requirements.

   e.   *Aetna's Covid Testing Policies Directly Contradict Congress and its Mandates.*

151.   Over the course of the COVID-19 public health emergency, Aetna has issued several statements, publications, and policies that provide for the framework of how Aetna has unilaterally and arbitrarily determined that it will adjudicate Covid Testing claims. However, despite its consistent representations and statements that it must cover Covid Testing claims subject to Sections 6001, 6003, and 6004 of the FFCRA and reimburse Covid Testing claims subject to Section 6001 of the FFCRA in accordance with Section 3202(a) of the CARES Act, Aetna also blatantly disregards these acknowledged requirements and proceeds to issue conflicting guides and policies.

152.   Two document examples where Aetna purports to comply with the FFCRA and the CARES Act is as follows:

## COVID-19: PATIENT COVERAGE FAQs

Will Aetna® cover the cost of COVID-19 testing for members? (As of 11/09/2020)

Yes. In addition, Aetna is waiving member cost-sharing for diagnostic testing related to COVID-19. The test can be done by any authorized testing facility. This member cost-sharing waiver applies to all Commercial, Medicare and Medicaid lines of business. The policy aligns with the Families First and CARES legislation and regulations requiring all health plans to provide coverage of COVID-19 testing without cost share. The requirement also applies to self-insured plans. Per guidance from the Centers for Medicare & Medicaid Services (CMS), the Department of Labor and the Department of the Treasury, all Commercial, Medicaid and Medicare plans must cover COVID-19 serological (antibody) testing with no cost-sharing.

## Will Aetna cover COVID-19 diagnostic and antibody tests under any circumstance? (As of 11/09/2020)

Aetna will cover, without cost share, diagnostic (molecular PCR or antigen) tests to determine the need for member treatment.[1] This includes to direct-to-consumer/home-based diagnostic or antigen tests. Aetna's health plans generally do not cover a test performed at the direction of a member's employer in order to obtain or maintain employment or to perform the member's normal work functions or for return to school or recreational activities, except as required by applicable law.

Aetna will cover, without cost share, serological (antibody) tests that are ordered by a physician or authorized health care professional and are medically necessary. Aetna's health plans do not cover serological (antibody) tests that are for purposes of: return to work or school or for general health surveillance or self-surveillance or self-diagnosis, except as required by applicable law. Refer to the CDC website for the most recent guidance on antibody testing.

This policy for diagnostic and antibody testing applies to Commercial, Medicare and Medicaid plans.[2]

[1]Aetna will follow all federal and state mandates for insured plans, as required.
[2]Regulations regarding testing for Aetna Medicaid members vary by state and, in some cases, may change in light of the current situation. Providers are encouraged to call their provider services representative for additional information.

## Does Aetna's no cost share coverage of COVID-19 testing apply to provider visits in and out of network? (As of 11/09/2020)

Yes. If the plan provides in and out of network coverage, then the cost-sharing waiver applies to testing performed or ordered by in-network or out-of-network providers. The policy aligns with Families First and CARES Act legislation and regulations requiring all health plans to provide coverage of COVID-19 testing without cost share.

Members should not be charged for COVID-19 testing ordered by a provider acting within their authorized scope of care or administration of a COVID-19 vaccine. Providers can seek reimbursement for uninsured patients through the Health Resources & Services Administration ("HRSA") for COVID-19 testing, treatment and vaccine administration. This information is available on the HRSA website.

and

## TESTING AND TREATMENT INFORMATION:
## COVERAGE AND AUTHORIZATION

**Will Aetna cover the cost of COVID-19 testing for members? (As of 11/09/2020)**

Yes. In addition, Aetna is waiving member cost-sharing for diagnostic testing related to COVID-19. The test can be done by any authorized testing facility. This member cost-sharing waiver applies to all Commercial, Medicare and Medicaid lines of business. Th policy aligns with the Families First and CARES legislation and regulations requiring all health plans to provide coverage of COVID-19 testing without cost share. The requirement also applies to self-insured plans. Per guidance from the Centers for Medicare & Medicaid Services (CMS), the Department of Labor and the Department of the Treasury, all Commercial, Medicaid and Medicare plans must cover COVID-19 serological (antibody) testing with no cost-sharing.

**Does Aetna's no-cost share coverage of COVID-19 testing apply to provider visits in and out of network? (As of 11/09/2020)**

Yes. If the plan provides in and out of network coverage, then the cost-sharing waiver applies to testing performed or ordered by in-network or out-of-network providers. The policy aligns with Families First and CARES Act legislation and regulations requiring all health plans to provide coverage of COVID-19 testing without cost share.

153.    Regardless of the fact that Aetna has publicized statements to members of its Aetna Plans, to the Employer Plans and other self-funded health plans, and to the general public acknowledging its obligations to comply with the FFCRA and the CARES Act, Aetna has deliberately issued conflicting and contradictory guidance and policies to providers in order to misinform providers of what Aetna's actual obligations during the public health emergency are.

154.    Aetna's COVID-19 pricing policy for Providers includes the following representations to providers that Aetna either does not comply with and/or contradicts/conflicts with its requirements under FFCRA and the CARES Act:

To ensure access for COVID-19 testing and have consistent reimbursement, Aetna will reimburse contracted and non-contracted providers for COVID-19 testing as follows in accordance with the member's benefit plan[8]. The following rates are used for COVID-19 testing for commercial and Medicare plans, unless noted otherwise:

Diagnostic testing/handling rates - Medicare

These reimbursement rates for COVID-19 diagnostic and antibody testing are based on rates announced by CMS. For more information and future updates, visit the CMS website and its newsroom. By submitting a claim to Aetna for COVID-19 testing, providers acknowledge that the above amounts will be accepted as payment in full for each COVID-19 test performed, and that they will not seek additional reimbursement from members.

155.    24 Hour Covid is a CLIA certified high complexity laboratory that administers Covid Tests that satisfy FDA's emergency use authorization requirements, and such Covid Tests are billed using the proper diagnosis and CPT codes set forth in Aetna's guidelines; therefore, 24 Hour Covid should, at the very least, assume that Aetna will cover all Covid Testing services billed to Aetna on behalf of its members but that is not the case.

156.    Aetna, despite these representations, has denied at least 800 bona fide Covid Testing claims submitted by 24 Hour Covid on behalf of Aetna members.

157.    Moreover, Aetna, despite its repeated acknowledgments of its obligations to comply with the FFCRA and the CARES Act, has instituted arbitrary and unilaterally determined payment guidelines and policies that directly conflict with Section 3202(a) of the CARES Act.

158.    Moreover, in other guidance issued by Aetna, Aetna does disclose that controlling state and federal laws and mandates supersede its guidelines and policies, and that coverage determinations take into consideration applicable federal and state laws, but that does not appear to be the case.

159.    In summary: (i) Aetna clearly acknowledges and represents its obligations to comply with the FFCRA and CARES Act when processing Covid Testing claims; (ii) publicizes Covid Testing billing and reimbursement guidelines and policies directly to providers that directly conflict with its acknowledged obligations; (iii) purports that state and federal laws and mandates supersede its own guidelines and policies when applicable, and these same state and federal laws are taken into consideration when Aetna makes benefit determinations; (iv) are still not covered by Aetna and/or are processed in accordance with its own unilateral policies and guidelines that are clearly superseded by federal law; and (v) despite 24 Hour Covid's over 5,000 appeal attempts

and numerous offers to negotiate and inquiry letters, Aetna, to this point, still does not feel the need to comply with the FFCRA and the CARES Act or to even provide a response.

160.    Aetna's words give the illusion of compliance that providers and Aetna members have relied upon, but its unlawful and contradictory actions speak otherwise.

[CAUSES OF ACTION ON NEXT PAGE]

## CAUSES OF ACTION

## STANDING TO PURSUE A CLAIM UNDER THE FFCRA AND CARES ACT

161.    24 Hour Covid has standing to sue under the FFCRA and the CARES Act. The Court in *Diagnostic Affiliates of Northeast Hou, LLC v. United Health Group, Inc. et al.* concluded there is an implied private right of action to enforce the provisions of the FFCRA and CARES Act coverage and reimbursement requirements.[27] The Court, to determine this, used the rubric set out by the Supreme Court in *Cort v. Ash* [28], along with *Touche Ross & Co. v. Redington*[29] to determine whether Congress intended a private cause of action in drafting the FFCRA and the CARES Act.

162.    The Court considering the four factors set out in *Cort* and giving the greatest weight to the first 3 factors as most indicative of Congress's intent, concluded 24 Hour Covid established the very heavy burden to show that Congress intended a private enforcement in regard to the FFCRA and CARES Act, and overcame the presumption that Congress did not intend to create a private cause of action. [30] To summarize, 24 Hour Covid is a part of the class intended to benefit from the statute because: (i) of the mandatory reimbursement language in the statute; (ii) the evidence of legislative intent to create a private right of action since the FFCRA and CARES Act state clear rights to reimbursement; and (iii) the Court concluded a private right of action is consistent with the Legislative scheme since Congress mandated reimbursement.

---

[27] *Diagnostic Affiliates of Northeast Hou, LLC. V. United Health Group, Inc. et al.*, No. 2:21-CV-00131, (S.D. Tex. Jan. 19, 2022)
[28] *Cort v. Ash*, 422 U.S. 66, 78 (1975)
[29] *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575–76 (1979)
[30] *Acara v. Banks*, 4701 F. 3d 569, 571 (5th Circ. 2006)(per curiam).

**COUNT I: VIOLATION OF SECTION 6001 OF THE FFCRA AND
SECTION 3202(a) OF THE CARES ACT
(Against Aetna and the Employer Plans)**

163.     The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

164.     The private health plans either insured or administered by Aetna and the Employer Plans are all subject to Section 6001 of the FFCRA, as amended, and Section 3202(a) of the CARES Act.

165.     The Covid Testing services that 24 Hour Covid provided to members of private Aetna health plans, including members of the Employer Plans that utilize Aetna as its third-party claim's administrator, constitute as in vitro diagnostic products for the detection of COVID-19, as provided by Section 6001 of the FFCRA.

166.     Aetna and, where applicable, the Employer Plans failed to cover over 800 hundred bona fide Covid Testing claims submitted by 24 Hour Covid on behalf of Aetna members.

167.     Additionally, 24 Hour Covid is an OON laboratory and does not have a negotiated rate with Aetna for the provision of Covid Testing services despite 24 Hour Covid's numerous attempts to do so.

168.     In compliance with the CARES Act, 24 Hour Covid posted its cash prices for Covid Testing services on its public website.

169.     Under section 3202(a)(2) of the CARES Act, if a health plan does not have a negotiated rate with a provider, such as 24 Hour Covid, for providing Covid Testing services, the health plan is obligated to pay the provider its posted cash price for providing those services.

170.     By reason of the foregoing, 24 Hour Covid has been injured.

171.     Based on the above, 24 Hour Covid is entitled to judgment against Aetna and the Employer Plans in an amount to be determined at the trial of this matter but no less than $7,090,578.87, plus interest thereon, together with the costs and disbursements of this action, including reasonable attorneys' fees.

<u>**COUNT II**</u>**: VIOLATION OF SECTION 6003 OF THE FFCRA**
**(Against Aetna)**

172.     The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

173.     The Medicare Advantage health plans administered by Aetna are all subject to Section 6003 of the FFCRA.

174.     The Covid Testing services that 24 Hour Covid provided to members of Medicare Advantage health plans administered by Aetna constitute as in vitro diagnostic products for the detection of COVID-19, as provided by Section 6003 of the FFCRA.

175.     Aetna failed to cover many bona fide Covid Testing claims submitted by 24 Hour Covid on behalf of members of Aetna's Medicare Advantage health plans.

176.     Additionally, for those Medicare Advantage Covid Testing claims that were covered by Aetna, many of the claims were not reimbursed at the appropriate Medicare rates that were applicable at the time of the Aetna members' dates of service.

178.     By reason of the foregoing, 24 Hour Covid has been injured.

179.     Based on the above, 24 Hour Covid is entitled to judgment against Aetna in an amount to be determined at the trial of this matter, plus interest thereon, together with the costs and disbursements of this action, including reasonable attorneys' fees.

## <u>COUNT III</u>: VIOLATION OF SECTION 6004 OF THE FFCRA
### (Against Aetna)

180.     The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

181.     The Medicaid Managed Care health plans administered by Aetna are all subject to Section 6004 of the FFCRA.

182.     The Covid Testing services that 24 Hour Covid provided to members of Medicaid Managed Care health plans administered by Aetna constitute as in vitro diagnostic products for the detection of COVID-19, as provided by Section 6004 of the FFCRA.

183.     Aetna failed to cover many bona fide Covid Testing claims submitted by 24 Hour Covid on behalf of members of Aetna's Medicaid Managed Care health plans.

184.     Additionally, for those Medicaid Managed Care Covid Testing claims that were covered by Aetna, many of the claims were not reimbursed at the appropriate Medicaid rates that were applicable at the time of the Aetna members' dates of service.

185.     By reason of the foregoing, 24 Hour Covid has been injured.

186.     Based on the above, 24 Hour Covid is entitled to judgment against Aetna in an amount to be determined at the trial of this matter, plus interest thereon, together with the costs and disbursements of this action, including reasonable attorneys' fees.

## COUNT IV: FRAUD
### (*Against Aetna*)

187.    The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

188.    Under Texas law, fraud occurs when: (i) a party makes a material misrepresentation; (2) the misrepresentation is made with knowledge of its falsity or made recklessly without any knowledge of its truth and as a positive assertion; (3) the misrepresentation is made with the intention that it should be acted on by the other party; and (4) the other party relies on the misrepresentation and thereby suffers.[31]

189.    Additionally, fraud can also occur through non-disclosure of material facts when the non-disclosing party had a duty to disclose.[32]

190.    As detailed above, Aetna has knowingly publicized a number of material representations and statements that purport to providers and Aetna members that it will adjudicate Covid Testing claims in accordance with the FFCRA and the CARES Act, and, in the event that its guideline and policies issued to providers contradict or conflict with these applicable laws, that its guidelines and policies will be superseded by these applicable laws.

191.    Aetna issued these material statements, guidelines, and policies to providers, like 24 Hour Covid, with the intention that providers act upon the contents of such representations.

192.    24 Hour Covid relied upon these material representations by agreeing to render Covid Testing services to Aetna members and billing Covid Testing claims to Aetna on behalf these members with the expectation that Aetna would cover and not deny and/or underpay the

---

[31] *Connecticut Gen. Life Ins. Co. v. Humble Surgical Hosp., L.L.C.*, 878 F.3d 478, 487 (5th Cir. 2017) (citing *United Teacher Assocs. Ins. Co. v. Union Labor Life Ins. Co.*, 414 F.3d 558, 566 (5th Cir. 2005) (citing *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)).
[32] *Id.* (citing *White v. Zhou Pei*, 452 S.W.3d 527, 537 (Tex. Ct. App. 2014)).

thousands of Covid Testing services that it has. Also, in the instances that Covid Testing Services were covered, that it would be reimbursed in accordance with Section 3202(a) of the CARES Act.

193.    Moreover, Aetna intentionally concealed materials facts from 24 Hour Covid despite having a duty to disclose such facts to 24 Hour Covid.

194.    As detailed above, 24 Hour Covid sent multiple request letters and inquiries to Aetna to demand why its Covid Testing claims adjudication practices violated applicable federal law, but Aetna did not provide a single response, thereby constructively concealing materials facts from 24 Hour Covid.

195.    Additionally, 24 Hour Covid submitted over 2,000 appeals to Aetna through its internal administrative appeals process, but, despite a duty to provide a thorough response pursuant to the claims procedures as set forth in 29 CFR § 2560.503-1 and 45 CFR § 147.136 that considers and factors in a review and analysis of all appliable laws (*e.g.* the FFCRA and the CARES Act), Aetna both concealed materials facts that were relevant to adjudication of the Covid Testing claims, and when making reference to the public health emergency and the FFCRA/CARES Act concealed its obligations to comply with these requirements and, instead, manufactured its own obligations.

196.     Based on the above, 24 Hour Covid is entitled to punitive damages, interest, costs of suit, attorneys' fees, and such other relief as the Court deems equitable and just, due to Aetna's conscious and outrageous disregard of 24 Hour Covid, other similarly-situated providers, and its health plan members.

## COUNT V: PROMISSORY ESTOPPEL
### (*Against Aetna*)

197**.**    The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

198.    Aetna undertook conduct that conveyed to 24 Hour Covid that coverage for COVID testing would be afforded to its members, but then denied claims, arbitrarily adjudicated claims, and refused to issue proper reimbursements when the claims were submitted on behalf of the members of health plans insured or administered by Aetna.

199.    Aetna expected, or reasonably should have expected, that 24 Hour Covid would rely on Aetna's compliance with the FFCRA and the CARES Act, especially given its public statements and publications emphasizing its compliance with the aforementioned laws, and that any policies and guidelines implemented by Aetna would be superseded by these applicable laws whenever there was a conflict between its policies/guidelines and applicable law.

200.    Aetna's publicized statements and publications regarding its compliance with the requirements of the FFCRA and the CARES Act, and the adjudication and full payment of Plaintiff's cash price on Covid Testing claims from time-to-time induced 24 Hour Covid's reasonable reliance on the promise to properly cover and reimburse 24 Hour Covid in accordance with the FFCRA and/or the CARES Act.

201.    24 Hour Covid detrimentally relied on Aetna's promises to pay by continuing to provide Covid Testing services to Aetna members. 24 Hour Covid's reliance on the promises caused it to suffer a definite and substantial detriment and has caused it damage.

202.     Based on the above, 24 Hour Covid is entitled to compensatory damages, interest, costs of suit, attorneys' fees, and such other relief as the Court deems equitable and just.

**JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby requests a trial by jury on all issues so triable.

**PRAYER**

Plaintiff demands judgment in its favor against Aetna and/or the Employer Plans as follows:

1. awarding 24 Hour Covid an amount of damages to be determined at the trial of this matter, which amount is no less than $7,090,578.87;

2. declaring that Aetna and/or the Employer Plans have breached the FFCRA and/or the CARES Act regarding the coverage and reimbursement of the Covid Testing service claims submitted by 24 Hour Covid, as well as awarding injunctive and declaratory relief to prevent Aetna and/or the Employer Plans continuous actions detailed herein;

3. a permanent injunction directing Aetna to comply with the applicable requirements of the FFCRA and the CARES Act by covering bona fide Covid Testing claims and reimbursing 24 Hour Covid in accordance with the applicable methodologies;

4. exemplary and punitive damages;

5. pre-judgment and post-judgment interest;

6. reasonable and necessary attorneys' fees incurred by 24 Hour Covid;

7. cost of court; and

8. for such other relief as the Court deems just and proper.

Respectfully submitted,

By: /s/ Ebad Khan
Ebadullah (Ebad) Khan
Federal Bar No. 2810999
State Bar No. 2409265
ekhan@24hourcovid.com
22001 Northpark Drive, Suite 221
Kingwood, Texas 77339
(281) 319.8306 Direct
(281) 605.6690 Facsimile

***Attorney for Plaintiff***